WALLINGFORD BOARD OF EDUCATION *v.* STATE BOARD OF EDUCATION ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE No. CV800178446S
NEW HAVEN

Memorandum filed May 15, 1980

*Peter Janus,* for the plaintiff.

*Carl R. Ajello,* attorney general, and *Charles E. Gooley,* assistant attorney general, for the defendant state board of education.

*Stephen Wizner,* for the defendant John Close et al.

NORTON M. LEVINE, J. This case arises out of the problems encountered in providing for the special education of a minor who is a resident of the city of Wallingford. The child is handicapped, fourteen years old, displaying autism and retardation. It is claimed that he has a variety of educational and other special needs, and requires a structured program to address those needs.

For some two years, the child has been an inpatient at Riverview School, an adjunct of Riverview Hospital. The school is an agency of the state of Connecticut, located in Middletown. It appears that the plaintiff, the Wallingford board of education (hereinafter the Wallingford board), was responsible for the child's placement in Riverview. The Wallingford board is obligated to provide special education for school age children within its jurisdiction who require special education. General Statutes § 10-76d (b) (1).

The child's parents were not satisfied with his institutional training and education at Riverview. On or about April 17, 1979, they requested a hearing before a state hearing officer to determine the proper special education program for the child. General Statutes § 10-76h (c).

The defendant state board of education (hereinafter the state board) appointed the defendant Joyce C. Driskell as a hearing officer to conduct the required hearing. After an initial hearing, a subsequent hearing was convened in this matter before Driskell.

Driskell handed down a written decision dated January 24, 1980, determining, in part, that the child was, in fact, handicapped. She concluded that a private institution, known as the Behavioral Research Institute (hereinafter the institute), located in Rhode Island, was the appropriate educational setting for the child. She also found that this "represents the least restrictive placement for [the child], because of the lack of a comparable residential program in Connecticut," and that "[p]lacement at [the institute] is a placement for educational reasons."

The Wallingford board claimed to be aggrieved by the decision, and prosecuted an appeal therefrom pursuant to General Statutes §§ 10-76h (e) and 4-183 (b). The return date of its writ was March 11, 1980.

On or about March 24, 1980, the state board filed a pleading captioned: "Motion For Order To Compel The Plaintiff To Comply With Defendant Hearing Officer's Decision, Pending Final Judgment On This Appeal." It alleged therein that the Wallingford board failed to comply with Driskell's decision, and asserted that it has the power to take action at this juncture to enforce that decision pursuant to General Statutes § 10-76h (e).

So far as the court can determine, the issue herein is one of first impression under the Uniform Administrative Procedure Act (hereinafter the UAPA). General Statutes §§ 4-166 through 4-189.

The state board's motion cannot be granted for two reasons. Initially, under the UAPA, this court lacks power to grant the particular interim relief sought by the state board. Next, even if, arguendo, this court possessed the statutory power to act, the record herein does not warrant a favorable response to that motion.

Initial attention is focused on the UAPA as the vehicle for this appeal, and the rights of the parties thereunder.

A major issue herein is the meaning and scope of General Statutes § 4-183 (c). That section reads: "The filing of the petition does not of itself stay enforcement of the agency decision. The agency may grant, or the reviewing court may order, a stay upon appropriate terms."

The ruling of the hearing officer was favorable to the claims of the defendants. The Wallingford board has made no effort, to date, to request a stay of that order pursuant to § 4-183 (c). Instead, the state board elected to file the present motion.

The state board's motion attempts to obtain a preliminary mandatory injunction or an order of mandamus of some type, compelling the Wallingford board forthwith to transfer the child to the institute pending final determination of the appeal. The defendants have not cited any precedent expressly permitting such an order to issue under the UAPA. The sole and exclusive interim action authorized under the UAPA is a stay requested by the *non-prevailing party* at the administrative hearing, here the Wallingford board.

Phrased alternatively, the court has no jurisdiction, under § 4-183, to enter an interim enforcement order against an appellant, such as the Wallingford board, on the request of an appellee in the status

of the state board. *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 587.

It is axiomatic that appeals to the courts from the actions of administrative agencies or hearing officers exist only under explicit statutory authority. *Old Rock Road Corporation* v. *Commission on Special Revenue,* 173 Conn. 384, 386. Such appeals may be prosecuted only upon strict compliance with the statutes pertaining thereto. They cannot be maintained or inhibited by seeking orders not expressly provided for in such statutes. *East Side Civic Assn.* v. *Planning & Zoning Commission,* 161 Conn. 558, 560; *McAuliffe* v. *Carlson,* 30 Conn. Sup. 118, 121. The court should not, by construction, supply a claimed omission in the UAPA appeal provisions, or add exceptions to them, merely because it appears to the court or the litigants that good reasons exist for adding them. *State ex rel. Kennedy* v. *Frauwirth,* 167 Conn. 165, 168.

An appeal from an administrative agency is a special statutory proceeding, and is not a "civil action," as is a declaratory judgment case. *Bara* v. *Personnel Appeal Board,* 30 Conn. Sup. 333, 334.

It is therefore clear that the court has no jurisdiction to compel the Wallingford board to take affirmative transfer action at this time and in the manner requested by the present motion. Compare *Ingram* v. *Bethel Board of Education,* 34 Conn. Sup. 277, 280 (mandamus against school board denied in case of thirteen-year-old child requiring special education because of emotional and autistic problems).

The conclusion just expressed is fortified by additional comments pertaining to the actual substance of this motion. In rejecting the motion, the court finds persuasive the cogent analysis in *Connecticut*

*Life & Health Insurance Guaranty Assn.* v. *Daly,* 35 Conn. Sup. 13, 17. In that case, the court, in discussing a stay, applied a "balancing test." That test weighs the equities. It balances the harm that may be suffered by an appellant by enforcement of an agency order pending the appeal, against the public harm that may result from delaying the effectiveness of the order.

On application of the "balancing test" to the proposed enforcement order, the court concludes that the claimed benefits which would be produced by the transfer of the child to the institute are more than offset by the harm which would be caused the Wallingford board if the temporary order were to issue. *Sisters of St. Joseph Corporation* v. *Atlas Sand, Gravel & Stone Co.,* 120 Conn. 168, 175.

Under General Statutes § 10-76d, the Wallingford board, and not the hearing officer, has primary responsibility for providing special education programs for children identified as "handicapped."

It is noteworthy that the initial annual costs to the Wallingford board to finance the care in the institute for the child would be about $44,000.

If the state board's motion were granted, it would mean that the child would be forthwith transferred to Rhode Island for education at the institute. The effort involved thereafter in securing a final determination from the trial court, plus any ensuing appeal to the Connecticut Supreme Court, might well consume an additional two or three years.

Next, if the Supreme Court were finally to rule adversely to defendants' contentions, the youth would thereupon have to be returned to a Connecticut facility suited for his needs. The defendants, however, would have thereby achieved a "victory,"

of impressive proportions, through an administrative order which continued in force for some two to three years, notwithstanding their eventual defeat on appeal.

In turn, the Wallingford board's ultimate success, following two or three years of its compliance with the "temporary" order herein, would constitute an exercise in hollow rhetoric and little more. The Wallingford board would have initially expended some $44,000 annually on a mandated project for which the court might ultimately determine that it had no legal liability. It would thus be exposed, at the outset, to an expenditure which might total $132,000.

It is correct that the Wallingford board has some partial rights of reimbursement from the state for this expense, pursuant to a complicated formula contained in General Statutes § 10-76g (c) as amended by Public Acts 1979, No. 79-128, § 17. Counsel have agreed that the Wallingford board's total reimbursement percentage would be approximately 55-57 percent. Nevertheless, even the net expense chargeable to the Wallingford board arising out of the proposed order is a substantial factor militating against approval thereof.

The powers of this court on an administrative appeal under General Statutes § 4-183 (g) have been recently discussed by the Supreme Court. *Feinson* v. *Conservation Commission*, 180 Conn. 421, 429. Those statutory powers would be, on the basis of the future events which might occur, virtually emasculated as a consequence of granting the state board's motion.

Several additional comments should be made. The motion, in effect, seeks mandatory injunctive relief. The burden is hence on the moving party, in this case the state board, to prove irreparable

injury. *Chambers* v. *New Haven,* 31 Conn. Sup. 362, 369. That burden has not been satisfied in the present case. The state board's allegations in this vein are conclusory and unsubstantiated.

The hearing officer's decision, dated January 24, 1980, is not as detailed and informative on this issue as it should be. In any event, it is highly significant that her finding is completely devoid of any statement that Riverview is substantially or entirely unsuitable for the child or that irreparable injury will be caused the child if he remains at Riverview pending final resolution of this appeal.

As a corollary, mandatory injunctive relief is generally not appropriate at a preliminary stage of the case. *Tyson* v. *Norton,* 390 F. Sup. 545, 550 (D. Conn.), aff'd in part, vacated in part, 523 F.2d 972 (2d Cir.); *Zoning Commission* v. *Leninski,* 34 Conn. Sup. 66, 69–70.

The court is keenly aware of the many emotional and practical problems encountered by all of the parties in attempting to provide a proper educational and developmental environment for the youth herein. Nevertheless, the court must adhere to the rules of law as contained in the UAPA and the other pertinent authorities, which must govern disposition of the present motion. The status quo should be maintained in this case pending further developments consonant with the foregoing.

Therefore, the state board's motion is denied.